IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
No. 22-1967

| | | |
|---|---|---|
| SHELLIE ELLISON, | ) | |
| | ) | Appeal from the United States District |
| Plaintiff / Appellant, | ) | Court for the Southern District of |
| | ) | Indiana |
| | ) | |
| v. | ) | Cause No. 1:20-cv-00953-RLY-MPB |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | The Honorable Richard L. Young, Judge |
| | ) | |
| Defendant / Appellee. | ) | |

---

## BRIEF AND SHORT APPENDIX OF APPELLANT

---

Kenneth J. Falk
*Counsel of Record*
Stevie J. Pactor
ACLU OF INDIANA
1031 E. Washington St.
Indianapolis, IN  46202
317/635-4059
kfalk@aclu-in.org
spactor@aclu-in.org
*Attorneys for the appellant*

i

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1967

Short Caption: Ellison v. USPS

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Shellie Ellison

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

ACLU of Indiana

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A/

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: Kenneth J. Falk    Date: June 6, 2022

Attorney's Printed Name: Kenneth J, Falk

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ✓  **No** ☐

Address: ACLU of Indiana, 1031 E. Washington St.

Indianapolis, IN 46202

Phone Number: 317/635-4059    Fax Number: fax: 317/635-4105

E-Mail Address: kfalk@aclu-in.org

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1967

Short Caption: Ellison v. USPS

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Shellie Ellison

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

ACLU of Indiana

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

  N/A

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: Stevie J. Pactor Date: June 10, 2022

Attorney's Printed Name:  Stevie J. Pactor

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address:  ACLU of Indiana, 1031 E. Washington St.

Indianapolis, IN 46202

Phone Number: 317-635-4059 Fax Number:  317-635-4105

E-Mail Address: spactor@aclu-in.org

rev. 12/19 AK

# TABLE OF CONTENTS

Table of Authorities ................................................................. v

Jurisdictional Statement ........................................................ 1

Statement of the Issues ......................................................... 1

Statement of the Case ........................................................... 2

    I.    Factual Background ...................................................... 2

        A.   The Shelbyville post office ...................................... 2

        B.   Shellie Ellison and her use of the Shelbyville post office ........ 6

        C.   Accommodations that have been offered to Ms. Ellison .......... 9

        D.   Proposed alterations to the post office building ..................... 12

        E.   Other post office locations and USPS website ...................... 16

    II.   Procedural history ....................................................... 17

Summary of the Argument ...................................................... 18

Argument .............................................................................. 21

    I.    Standard of review ...................................................... 21

    II.   The Rehabilitation Act requires that USPS provide Ms. Ellison, a qualified person with a disability, meaningful access to its programs and activities and requires reasonable accommodations so that this may occur .........22

    III.  The accommodations offered to Ms. Ellison do not provide her with the opportunity to gain the same benefits from the USPS that persons obtain who are physically able to enter the Shelbyville post office and are therefore not reasonable ................................................................... 26

           A.   Neither use of the USPS website or accessing services through out-of-town post offices are reasonable alternatives or modifications in that they do not provide meaningful access to Ms. Ellison ........................... 27

i

1.      Traveling to the out-of-town post offices is not a reasonable alternative .............................................. 27

2.      Accessing postal services on the USPS website is not a reasonable accommodation ....................................... 30

B.      The alternative proposed by USPS, but not accepted by the district court, for Ms. Ellison to use the ramp at the rear of the post office also does not provide meaningful access............. 32

IV.     The reasonable accommodation that is required so that Ms. Ellison can have  equal access to the services of the Shelbyville post office requires that she be provided with physical access to the building.............. 34

Conclusion............................................................................................... 38

Certificate of Compliance ..................................................................... 39

Certificate of Service.............................................................................. 40

Short Appendix ................................................................................... S.A. 1

Entry on Cross-Motions for Summary Judgment (May 19, 2022
as District Court Docket No. 48) ............................................. S.A. 1

Final Judgment (May 19, 2022 as District Court Docket No. 49.......... S.A. 15

Statement of Compliance with Circuit Rule 30(d)............................... S.A. 16

# Table of Authorities

## Cases

*A.H. by Holzmueller v. Ill. High Sch. Ass'n.*, 881 F.3d 587 (7th Cir. 2018) ...................... 23, 36

*Alexander v. Choate*, 469 U.S. 287 (1985) ......................................................................... passim

*Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871 (7th Cir. 2013).... 24

*Bassilios v. City of Torrance, CA*, 166 F. Supp. 3d 1061 (S.D. Cal. 2015) ............................... 31

*Celeste v. East Meadow Union Free Sch. Dist.*, 373 Fed. App'x 85 (2d Cir. 2010) ........... 19, 29

*Chaffin v., Kan. St. Fair Bd.*, 348 F.3d 850 (10th Cir. 2003) .......................................... 25, 35

*Colbert v. District of Columbia*, 110 F. Supp. 3d 251 (D.D.C. 2015) ...................................... 37

*Disabled in Action v. Bd. of Elections in City of NY*, 752 F.3d 189 (2d Cir. 2013) ................. 24

*Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784 (10th Cir. 2020) ..................................... 36

*Gates v. Caterpillar, Inc.*, 513 F.3d 680 (7th Cir. 2008) .............................................................. 10

*Golla v. Office of Chief Judge of Cook Cnty., Ill.*, 875 F.3d 404 (7th Cir. 2017) ........................ 21

*Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116 (7th Cir. 1997) ........................................... 24

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ........................................................... 24

*Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668 (7th Cir. 2016) ...........................................22

*Kirola v. City and Cnty. of San Francisco*, 860 F.3d 1164 (9th Cir. 2017) ............................... 32

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159 (10th Cir. 2012) ........................................ 25

*Nat'l Ass'n of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49 (D. Mass. 2019) ..................... 37

*Nat'l Fed. of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016) ............................................. 35

*Neighborhood Ass'n of the Back Bay, Inc. v. Fed. Trans. Admin.*, 463 F.3d 50 (1st Cir. 2006) 28

*Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775 (7th Cir. 2002).....
....................................................................................................................................20, 35

*Parker v. Universidad de Puerto Rico*, 225 F.3d 1 (1st Cir. 2000) ............................................ 35

*Randolph v. Rodgers*, 170 F.3d 850 (8th Cir. 1999) .................................................................. 37

*Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473 (7th Cir. 2019) ........................................... 37

*Segal v. Metro. Council*, 29 F.4th 399 (8th Cir. 2022) ............................................................... 25

*Steimel v. Wernert*, 823 F.3d 902 (7th Cir. 2016) ...................................................................... 37

*Sturtz v. Wis. Dep't of Corr.*, 642 F. Supp. 2d 881 (W.D. Wis. 2009) ...................................... 31

*Tennessee v. Lane*, 541 U.S. 509 (2004) .............................................................................. 21, 35

*Turner v. Mull*, 784 F.3d 485 (8th Cir. 2015) ........................................................................... 37

*Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840 (7th Cir. 1999) ................... 23

*Willits v. City of Los Angeles*, 925 F. Supp. 2d 1089 (C.D. Cal. 2013) ................................... 36

*Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006) ................. 18, 25

*Wright v. New York State Dep't of Corr.*, 831 F.3d 64 (2d Cir. 2016) ............................... 28, 36

## Statutes

29 U.S.C. § 705(20)(B) ............................................................................................................ 22, 23

29 U.S.C. § 794 ....................................................................................................................... passim

39 U.S.C. § 401(7) ....................................................................................................................... 13

iii

42 U.S.C § 12132 ................................................................................................ 22

42 U.S.C. § 12102 ................................................................................... 22, 23, 28

42 U.S.C. § 12131 ............................................................................................... 23

42 U.S.C. § 4154a ............................................................................................... 22

42 U.S.C. § 4151 ................................................................................................. 22

42 U.S.C. § 4155................................................................................................. 22

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................... 21

**Regulations**

28 C.F.R. § 35.150(a) .......................................................................... 18, 21, 25, 36

28 C.F.R. § 35.150(b)(1) ...................................................................... 20, 23, 31, 37

28 C.F.R. § 41.53.......................................................................................... 25, 36

28 C.F.R. § 35.150 ............................................................................................... 36

36 C.F.R § 800................................................................................................. 14

39 C.F.R. § 255.2(h)(2) ....................................................................................... 23

## Jurisdictional Statement

The district court had original jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1346. The district court's jurisdiction was based on an alleged violation of the Rehabilitation Act, 29 U.S.C. § 794, by the United States Postal Service.

The Court of Appeals has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291 since this is an appeal of the Final Judgment of the district court entered on May 19, 2022 (District Court Docket ["Dkt."] 49, Short Appendix ["S.A."] 15) and the district court's Entry on Cross-Motions for Summary Judgment (Dkt. 48, S.A. 1), also entered on May 19, 2022.

No party is a corporation, unincorporated association, or partnership. No motion for a new trial or for alteration of the judgment or any other motion that tolls the time within which to appeal has been filed in this matter. This is not an appeal from a decision of a magistrate judge. There are no prior or related appellate proceedings, and no party appears in his or her official capacity.

## Statement of the Issue

Shellie Ellison is a person with a disability who uses a wheelchair for mobility and lives in Shelbyville, Indiana. As a result, she is not able to enter the only post office in Shelbyville as it has stairs at its only public entrance and a ramp at its rear that leads to a back door that the public may not use. She was therefore not able to access the post office box that she maintained for the not-for-profit organization that she heads. Nor is she able

1

to access the many services provided by the post office. The issue in this case is whether the district court erred in concluding that this lack of access did not violate the Rehabilitation Act, 29 U.S.C. § 794(a), because in the court's estimation, Ms. Ellison was not denied "the benefits" of the "program or activity" of the post office, *id.*, as she could access postal services both by obtaining services online, although not all online services are comparable to those available in-person, and by travelling to more distant out-of-town post offices that have more limited hours and perhaps more limited services than available at the Shelbyville post office.

## Statement of the Case

I.      Factual Background

   A.      The Shelbyville Post Office

Shelbyville, Indiana—a city of approximately 20,000 people—has one post office, which is located downtown at 103 E. Washington Street. (Dkts. 33 at 2 [citing census data]; 32-2 at 9 [ll. 2-4]; 32-3 at 51).[1] The United States Postal Service ("USPS") owns the building in which Shelbyville's only post office is located, which was constructed and occupied in the 1920s or 1930s. (Dkt. 32-3 at 46). The main entrance, which is the only public entrance to the building, is accessible only via a set of exterior steps as is shown below. (Dkts. 32-3 at 51; 32-2 at 29 [l. 24] – 30 [l. 30]).

---

[1]      These exhibits are the depositions of Donna Hedges and Jose Martin Del Herrio, who both were designated as witnesses by USPS pursuant to Fed. R. Civ. P. 30(b)(6). (Dkts 32-2 at 6 [l. 13] - 7 [l. 19]; 32-3 at 7 [l. 14] - 8 [l. 23]).



(Dkt. 32-3 at 51).

Once a person enters the building, there are rental post office boxes directly in front of them and extending around the corner to the right. (Dkt. 32-2 at 9 [l. 22] – 10 [l. 17], 79). In this area there are display cases with information that USPS wishes to inform the public about, such as what can and cannot be mailed. (*Id.* at 17 [l. 11] – 18 [l. 24]).

To the person's left, behind a set of glass doors, is the area where customers can receive in-person service, which is referred to as the "retail lobby" (Dkt. 32-2 at 11 [ll. 1-9]). This area contains a bulletin board and display cases with marketing posters and notices concerning special services provided by the post office, as well as information about different styles of stamps and pricing of the various services offered by the post

office. (*Id.* at 21 [l. 18] – 23 [l. 8]).  It is shown below.



(Dkt. 32-2 at 81).

　　　　The retail lobby includes a counter where customers can interact with employees
to receive a variety of services. (*Id.* at 24 [l. 18] – 27 [l. 2]). Employees can assist in the
selection of different mailing and packaging options such as express, priority, retail
ground, media mail, and bound print. (*Id.*). Customers can purchase stamps, including
choosing particular stamp designs (*e.g.*, "LOVE" stamps for wedding invitations). (*Id.* at
24 [ll. 9-13]). Customers can also have their mail weighed by USPS employees or get
assistance taping their packages and discussing insurance options. (*Id.* at 24 [ll. 15-17]; 27
[l. 19] – 28 [l. 6]). While there are any number of employees on duty who may assist with

4

customer service at the counter, in addition to fulfilling their other duties, there is usually just one person who waits on customers. (*Id.* at 16 [ll. 5-20] – 17 [l. 10]). If there are more than three people in line, another clerk is supposed to assist. (*Id.* at 16 [l. 20]).

The retail lobby also contains racks of items available for purchase, such as specialty packaging, gift cards to restaurants and stores, greeting cards, and shipping supplies. (*Id.* at 12 [l. 11] – 13 [l. 4]). There is also a workstation containing items that customers may use or take with them as needed, such as official USPS envelopes and packaging, certified and return mail receipts, signature confirmation cards, and hold-mail cards. (*Id.* at 13 [ll. 5-20], 23 [l. 10] – 24 [l. 4]). The workstation also contains information about selective service registration, USPS's informed delivery system, and what items can safely be mailed. (*Id.*)

From Monday through Friday, the retail lobby is open from 8 a.m. to 4:30 p.m., and it is open from 8 a.m. to 2:30 p.m. on Saturday. (*Id.* at 15 [ll. 20-22]).[2] The area outside the retail lobby where the post office boxes are located has historically been open 24-hours a day, but during the course of this litigation, its hours were temporarily curtailed to 6:00 a.m. to 5:30 p.m. on weekdays and Saturdays from 6 a.m. to 3 p.m., because of ongoing construction work following an electrical fire at the post office. (*Id.* at 14 [l. 9] – 15 [l. 16]). The 24-hour access to post office boxes will return when construction is done.

---

[2]     This totals 49 hours a week. The district court stated that the Shelbyville post office was only open 46.5 hours a week based on hours posted on the USPS website, although it noted that the USPS's deposition designate testified that the total was 49 hours a week. (S.A. at 12 n.8).

(*Id.* at 15 [l. 23] – 16 [l. 4]). The Shelbyville post office serves between 175 and 250 persons a day. (*Id.* at 60 [ll. 3-11]; Dkt. 32-3 at 51).

At the rear of the Shelbyville post office is a loading dock, which is not a public entrance to the building. (Dkt. 32-2 at 29 [l. 24] – 30 [l. 30]). It contains a ramp that leads to the exterior back door. (*Id*. at 30 [ll. 5-8]). Mail trucks use this loading dock to load and unload mail, and mail carriers use the ramp to go in and out of the post office. (*Id*. at 31 [l. 17] – 32 [l. 25]). Both FedEx and UPS use the postal service to deliver their packages so, at times, FedEx and UPS trucks park and drop items off at the loading dock. (Dkt. 32-2 at 34 [l. 19] – 36 [l. 4]).

B.    Shellie Ellison and her use of the Shelbyville post office

To point out the obvious, a person with mobility impairments and in a wheelchair is unable to access the public entrance of the Shelbyville post office because it is accessible only via a number of stairs. (Dkt. 32-3 at 24 [ll. 12-18]). And non-employees are not permitted to enter the post office through the rear entrance on the loading dock. (*Id.* at 39 [ll.2-4]).[3]

Ms. Ellison has lived in Shelbyville since 2012. (Dkt. 32-1 at 7 [l. 20] – 8 [l. 4]). Since 1997, she has suffered from the auto-immune disease transverse myelitis. (*Id.* at 8 [l. 22] –

---

[3]    The Census Bureau has noted that from 2015-2019, 9.8% of the population in Shelbyville under the age of 65 had a disability, and 15.3% of the population of Shelbyville was 65 years or older.  (Dkt. 33 at 3 [citing census data]).

10 [l. 13]). It affects her body from the waist down, and she is not able to walk. (*Id.* at 10 [l. 17] – 11 [l. 21]). Since 1997, she has used a wheelchair to get around, and she is not able to climb stairs. (*Id.* at 10 [l. 17] – 12 [l. 4]).

In 2015, Ms. Ellison grew frustrated by her inability to access the Shelbyville post office. (*Id.* at 21 [l. 11] – 23 [l. 25]). To attempt to receive services, she would try to navigate the steep ramp at the loading dock and push a call button in the middle of the ramp to try to attract the attention of someone inside the building. (*Id.* at 21 [l. 20] – 22 [l. 1]). If someone came out to assist her, he or she would be required to travel back and forth into the building to transact Ms. Ellison's business: during a single visit, this involved several trips in and out of the post office to weigh her packages, take her debit card and PIN number to complete payment, and bring back a receipt to sign—all of which Ms. Ellison found disconcerting. (Dkt. 32-1 at 22 [l. 2] – 23 [l. 19]). And many times, when she rang the call button for service, employees were clearly less than happy to assist her. (*Id.* at 23 [ll. 21-24]). On other occasions, Ms. Ellison simply received no response. (*Id.* at 24 [ll. 15-18]).

In 2015, Ms. Ellison filed a complaint with the United States Access Board regarding the Post Office's inaccessibility. (*Id.* at 23 [ll. 3-5], 98). But the Access Board concluded that as the main steps of the post office "are original to the building's construction (prior to 1968) and have not been altered since," it could not require a change to the front entrance. (*Id.* at 96). Instead, in 2016, USPS installed a new accessible parking

7

space by the loading dock, rebuilt the rear ramp to lessen the grade, relocated the button to call for assistance to the top of the ramp, and installed another call button at the front of the accessible parking space. (Dkts. 32-1 at 111-13; 32-3 at 51-59).

The changes made in 2016 do not allow Ms. Ellison and other persons with disabilities to access the interior of the post office. (Dkts. 32-1 at 64 [ll. 20-24]; 32-3 at 22 [ll. 8-12]). If a person chooses to go up the ramp and ring the buzzer, they will have to remain outside, exposed to the elements, waiting for someone to come out (which may not happen), or if someone does come, then waiting while that employee travels back and forth to transact the person's business outside of the person's view. (Dkt. 32-1 at 89). This could be dangerous as the then-postmaster of the Shelbyville post office noted in a 2016 email that having customers come up the ramp would "impede on operations, at (*sic*) put the customers in Danger." (Dkt. 32-3 at 61).

Moreover, these changes have not resulted in access to the post office. At times, trucks block the space reserved for persons with disabilities. (Dkt. 32-1 at 60 [l. 19] – 61 [l. 1]). On one occasion, Ms. Ellison could not even get out of her car to use the call buttons. (*Id.* at 60 [ll. 3-18], 115). She tried to telephone the post office, but no one answered the phone and she had to ask a UPS person to get someone inside the post office to try to help her. (*Id.* at 60 [ll. 9-18]).

Ms. Ellison also wants to be able to access the post office boxes within the post office, which she may not do via access to the loading dock. (*Id.* at 64 [ll. 20-24]; Dkt. 32-3

8

at 22 [ll. 8-12]). Ms. Ellison is the president of an organization called Wheels on the Ground, which exists to educate the public on disability and accessibility issues. (Dkt. 32-1 at 13 [ll. 6-24], 17 [ll. 13-15]). The organization does not have a physical office, but it maintained a post office box rented by Ms. Ellison. (*Id.* at 14 [ll. 16-18], 65, 92). When she obtained the post office box, employees brought her through the rear entrance of the post office on the loading dock into back of the post office while she signed the necessary papers. (*Id.* at 71 [l. 14] – 72 [l. 22]). She believes that she was let in because it was cold or raining, and the staff who let her in said that they were not supposed to do so and did not allow her into the customer lobby. (*Id.* at 28 [l. 13] – 29 [l. 18]).  This was the only time that Ms. Ellison has been able to go inside the Shelbyville post office. (*Id.* at 72 [l. 23] – 73 [l. 1]).

Ms. Ellison has relied on board members to obtain the organization's mail, and if they are not available, Ms. Ellison has sent family members to retrieve it. (Dkt. 32-1 at 30 [l. 23] – 31 [l. 1]). On occasion she has gone to the post office and called to have an employee bring the contents of the post office to her car. (*Id.* at 31 [l. 2] – 32 [l. 1]). She would like to be able to retrieve the contents of any post office box herself. (Dkt. 32-4 at 1).

C.     Accommodations that have been offered to Ms. Ellison

At some point, after a number of telephone calls initiated by Ms. Ellison, a representative of USPS called her and offered to have the contents of the Wheels on the

Ground post office box delivered to Ms. Ellison's home. (Dkt. 32-1 at 89; 57 [l. 8] – 58 [l. 15]). This is the only service that USPS has offered Ms. Ellison, aside from being able to receive service on the loading dock. (Dkt. 32-2 at 55 [l. 9] – 56 [l. 4]).[4]

For many reasons, this was not, and still is not, a satisfactory solution to Ms. Ellison's inability to physically access the post office. She wants to keep the mail from Wheels on the Ground separate from her personal mail so that nothing will be missed. (Dkt. 32-1 at 89, 91; 64 [ll. 2-8]). She also wants to ensure that other persons, such as the treasurer, are able to retrieve bank statements and other information directly from the post office box. (*Id.* at 63 [l. 16] – 64 [l. 1]). In its "Why to Get a PO Box™" website feature, USPS indicates that in renting a post office box, a person can avoid having deliveries "sitting on [the] doorstep unprotected," "[k]eep . . . important documents confidential," and "[g]et mail at [one's] convenience with 24/7 access." (Dkt. 40-1, Exh. G).

---

[4]    In answers to interrogatories, USPS indicated that in addition to offering to deliver mail to Ms. Ellison from Wheels on the Ground's post office box, it had also offered to provide stamps-by-mail to Ms. Ellison at her home. (Dkt. 32-3 at 48). However, USPS's deposition designate later testified both that the only accommodations offered to Ms. Ellison were the home delivery of the contents of the post office box or service at the back of the post office and that the only accommodation that any person with a disability is receiving from the Shelbyville post office is delivery of their mail. (Dkt. 32-2 at 55 [ll. 13-20], 56 [ll. 18-24]). "It is well established in this Circuit that, as a general rule, a party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony in the absence of newly-discovered evidence or the unmistakable need to clarify prior ambiguous statements." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 n.5 (7th Cir. 2008) (citations omitted).

USPS noted that rural carriers can deliver some packaging material and stamps, if a customer orders them ahead of time, but these services are not offered in the city. (Dkt. 32-2 at 50 [l. 4] – 54 [l. 24]). Ms. Ellison and her family live in the city; they do not live on a rural route and do not receive rural mail delivery. (Dkt. 32-4 at 1).

Additionally, delivery of the contents of the post office box would not solve the numerous limitations imposed on Ms. Ellison because she is not allowed to physically enter the post office building. For example, she is not able to purchase mailing material and other related items available at the post office. (Dkt. 32-1 at 91). If she has to mail a package, she cannot buy the packaging at the post office. (*Id.).* If Ms. Ellison goes to the post office, is able to access the one parking space for persons with disabilities, and is able to get someone's attention to have them come out to help her, she will still have to surrender to them her debit card and PIN number and have them disappear for an unknown amount of time. (*Id.*). Ms. Ellison is denied the ability to even see what is offered by the post office. (*Id.* at 65 [ll. 8-9]). And if Ms. Ellison goes to the post office and is able to have someone respond—which does not always occur—she never knows what the staff's attitude will be and risks being met with staff looking at her "like why are you here, what are you doing, what do you want." (*Id.* at 23 [ll. 21-24]; 24 [ll. 10-18]).

Moreover, the offer to bring the contents of the post office box to her home, or any other accommodation offered by USPS, does not alter the fact that Ms. Ellison believes that as a person with a disability she has the same right as those without disabilities to be in public and obtain services. (*Id.* at 91). As Ms. Ellison indicated during her deposition:

> I still don't understand why it's okay to deny my right as a person, not just a person with a disability, just a person, the ability to enter our—a very, I don't know used community building. It's almost like I'm not—like my dignity and worth is not like everybody else's so I just need to stay home and not be part of my community.

And I don't know if you've ever had that feeling before, if you've ever had somebody tell you that just because of who you are, you can't have access to this. I mean, really honestly, I don't know if it was more a slap in the face, the fact that they put a ramp in the back of that building and yet you still can't have access inside, or the fact that you don't know if you're going to get service one day after calling and calling and you have things to do, but just telling me that I can get my P.O. box mail delivered to my home address does not alleviate all the issues.

(*Id.* at 64 [l. 9] – 65 [l. 4]).

Ms. Ellison rarely attempts to get services from the Shelbyville post office anymore, visiting only one or two times in 2019, before the pandemic in 2020. (*Id.* at 30 [ll. 4-13]). Now she goes to a private company in Shelbyville, PASS—Packing and Shipping Services—when she has packages to send out.  (*Id.* at 24 [ll. 5-7], 26 [l. 22] – 27 [l. 4]). She estimates that the services at PASS are three times more expensive than those at the post office, but she is treated better there and has not had the negative experiences that she had at the Shelbyville post office. (*Id.* at 24 [l. 4] – 25 [l. 1]). She wishes to be able to enter the Shelbyville post office and utilize all of the services available in the retail area there (as well as accessing the Wheels on the Ground post office box). (Dkt. 32-4 at 1).

D.     Proposed alterations to the post office building

In 2019, the City of Shelbyville notified USPS that the City was planning to do major reconstruction work and that the City would fund a project to make the Shelbyville post office accessible. (Dkt. 32-3 at 69). The Mayor of the City indicated that his office had "receiv[ed] a lot of complaints about the post office not being (ADA) accessible." (*Id.* at 68). The City presented to USPS architectural drawings of the ramp that it wished to

12

provide while it also installed ramps at two other locations on East Washington Street. (*Id.* at 71-75).

USPS refused the offer, indicating that federal regulations or policy prevented agencies from receiving donations, and this would be considered a donation. (*Id.* at 65, 35 [l. 20] – 37 [l. 13]).[5] The Mayor was informed that USPS was subject to the Architectural Barriers Act ["ABA"] rather than the ADA, and that USPS had adopted the technical standards of the ABA in its implementing handbook. (*Id.* at 66). However, USPS indicated that the ABA standards did not apply to the Shelbyville post office as the building predated the ABA cut-off for coverage, August 12, 1968, and there was no history of the front steps being altered since that time. (*Id.*). USPS further indicated that Section 504 of the Rehabilitation Act did apply to the structure, but accommodations under this law are "service-based, so if there are times when no other customers are around to help, disabled customers may call the Post Office from a cell phone to request that a clerk come out and help them." (*Id.*).

---

[5]    To support its refusal, USPS cited to a handbook that states that its "policy is to decline offers to donate any physical improvements, including without limitation, exterior improvements, landscaping, additions, renovations . . . to Postal Service-owned and leased property." (Dkt. 36-16). However, while setting out policy, this does not appear to establish an absolute prohibition given that the very same handbook provision specifies the situations under which active postal-service employees are able to donate physical improvements. (*Id.*). Moreover, the United States Code explicitly authorizes USPS "to accept gifts or donations of services or property, real or personal, as it deems, necessary of convenient in the transaction of its business." 39 U.S.C. § 401(7).

The Shelbyville post office is located within the National Register of Historic Places as part of the Shelbyville Commercial Historic District. (Dkt. 32-5 at 2-3). This does not prevent installation of a ramp or other alteration to the front of the building, but before doing so USPS must determine, pursuant to Section 106 of the National Historic Preservation Act of 1966, implemented by 36 CFR Part 800, whether the proposed action is an undertaking under the regulations—a project activity, or program that is carried out by or on behalf of a federal agency with federal financial assistance—and whether it will have an effect on historic properties. (*Id.* at 3). If so, the agency, here USPS, must "initiate consultation involving the appropriate State Historic Preservation Officer, the Tribal Historic Preservation Officer (if applicable), the Advisory Council on Historic Preservation, any relevant Indian tribe or native Hawaiian organization, and the public." (*Id.*).

On September 25, 2020, the Architect/Engineer for USPS and architects from DLZ Architecture, Engineering, Planning, Surveying, Construction Services, jointly sent a letter to Chad Slider in the Division of Historic Preservation & Archeology Department in the Indiana Department of Natural Resources, to initiate the Section 106 process pursuant to the above regulations, "because USPS is planning to add a new ABA Accessible ramp at the main public entrance off East Washington St." at the Shelbyville post office. (Dkt. 28-1 at 1). The letter notes that this is an undertaking under the relevant regulations but that "it is our determination that no adverse effect to historic properties

will result from this undertaking." (*Id.* at 1, 3). The letter also lists how USPS would give the appropriate notice to involve the required interested parties to consult and review the plans. (*Id.* at 2-3). The letter contains detailed architectural drawings of the plans for the ramp. (*Id.* at 5-7).

On October 28, 2020, Indiana's Deputy State Historic Preservation Officer responded indicating that "the staff of the Indiana State Historic Preservation Officer" had conducted an analysis of the material sent on September 25 and indicated that "we do not believe that any historic buildings, structures, districts, or objects listed in or eligible for inclusion in the National Register of Historic Places will be diminished as a result" of installing the ramp. (Dkt. 28-2 at 1). USPS was directed to move forward and analyze any comments and decide whether historic properties would or would not be affected and proceed pursuant to federal regulation, depending on which determination was made. (*Id.* at 1-2).

USPS has objected in discovery to disclosing the anticipated cost of installing the ramp, claiming that the cost analysis was done for purpose of this litigation and therefore is work-product that will not be disclosed. (Dkt. 32-5 at 4). Although USPS has refused to make the Shelbyville post office accessible it has, inexplicably, installed a lower counter in the retail lobby that makes the counter accessible to a customer in a wheelchair. (Dkt. 32-2 at 57 [l. 9] – 58 [l. 9]). Given that persons in wheelchairs cannot enter the post office, the deposition designate of USPS was not able explain why the counter was lowered to

make it accessible. (*Id.* at 65 [ll. 5-15]).

E.    Other post office locations and the USPS website

The USPS maintains a website that offers certain items for purchase as well as the delivery of free boxes and envelopes for sending items by priority mail or priority mail express. (Dkt. 37 at 5). However, only a subset of its mailing options is available to customers using online ordering. (Dkt. 40-1 at 1-2, 4). First class mail, first class package service, USPS retail ground, and media mail are only available at post office locations. (*Id.*). Mail that is sent as retail ground and media mail is cheaper to send than Priority Mail and Priority Mail Express services. (*Id.*).

Customers using online ordering must first acquire the correct mailing box or envelope if using a delivery option that requires one, such as flat-rate mailing. (Dkt. 40-1 at 1-2, 5). The USPS website indicates that such products ship within 2-8 business days of being ordered, and then must be delivered, though the timeline for delivery is not specified on the website. (Dkt. 40-1 at 1-2, 6-7). A customer who cannot enter the post office must then arrange for pickup of that package if it is too large to fit within a mail collection box. (Dkt. 40-1 at 1-2, 8). And while USPS shipping and mailing supplies are delivered to customers without shipping fees when ordered from the website, (Dkt. 40-1 at 1-2, 9), other products are not: retail products such as greeting cards and "premium" shipping supplies are subject to shipping and handling fees. (Dkt. 40-1 at 1-2, 10). Patrons who are able to enter the retail space at the Shelbyville Post Office are also able to

16

purchase gift cards and items such as holiday-themed mailing envelopes and boxes. (Dkt. 32-2 at 12 [l. 11] – 13 [l. 4]).  These items are not available on the website. (Dkt. 40-1 at 1-2).

There are three post offices within a 10-mile radius of the city of Shelbyville, all in outlying rural areas. (*See* Dkts. 46-1 – 46-4). All operate on a reduced-hour schedule, relative to Shelbyville. (Dkt. 37 at 4; Dkt. 46-2 [Fairland, Indiana: Monday – Friday, 8:00 a.m. – 1:00 p.m., 2:00 p.m. – 4:30 p.m., Saturday, 8:00 a.m. – 12:00 p.m.]; 46-3 [Manilla, Indiana: Monday – Friday, 8:00 a.m. – 12:00 p.m., Saturday, 9:00 a.m. – 11:00 a.m.]; 46-4 [Waldron, Indiana: Monday – Friday, 8:00 a.m. – 11:00 a.m., 1:00 p.m. – 4:00 p.m., Saturday 8:00 a.m. – 10:00 a.m.]). The Shelbyville Post Office is 2.7 miles from Ms. Ellison's home (Dkt. 46-1), and Fairland is 10.9 miles (Dkt. 46-2), Manilla is 9.2 miles (Dkt. 46-3), and Waldron is 7.7 miles (Dkt. 46-4).

II.    Procedural History

Following discovery, the parties cross-moved for summary judgment, with the plaintiff filing her motion on April 8, 2021 (Dkt. 32) and the defendant filing its cross-motion on May 10, 2021 (Dkt. 36). Those motions were fully briefed and ripe for review on June 9, 2021. (Dkt. 42). In response to a request by the court, the parties filed a stipulation informing the court as to the distances between Ms. Ellison's home and the above-referenced post office locations. (Dkt. 46). Ms. Ellison also filed a motion requesting to file a supplemental affidavit as to the specific retail offerings available at

the Shelbyville and outlying post office locations (Dkt. 47), which the district court ultimately denied as moot, (Dkt. 48).

On May 19, 2022, the district court issued its order granting the defendant's motion for summary judgment and denying the plaintiff's motion. (S.A. 1-15). This appeal ensued.

## Summary of the Argument

1.     The Rehabilitation Act, 29 U.S.C. § 794(a), provides that a qualified individual with a disability shall not be excluded by reason of her disability from, or denied the benefits of, programs or activities operated by the United States Postal Service ("USPS"). It is undisputed that Ms. Ellison is a qualified individual with a disability under the Rehabilitation Act. As such, she must be provided with "meaningful access" to the services and benefits provided by USPS. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). This requires "evenhanded treatment," *id.* at 304, and may, as necessary, require that reasonable accommodations be made, *id.* at 301. A reasonable accommodation must be such that the services of the entity, when viewed "in its entirety is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). The failure to make such a reasonable accommodation represents unlawful discrimination. *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006).

2.     The accommodations offered to Ms. Ellison by USPS are not reasonable as they do not give her meaningful access. She is not able to enter the physical structure of the post

18

office and is therefore denied the ability to access a whole range of services available to in-person customers such as purchasing greeting and gift cards, obtaining personal advice and assistance with mailing from staff, purchasing packaging and having staff assist with both taping the packages and providing information about insurance, and obtaining information about the different types of mailings and their cost.

The district court noted that Ms. Ellison could go to accessible post offices in small towns outside of Shelbyville. Although these post offices have post office boxes available, like those in the Shelbyville post office, using these post offices would require additional travel, and would require that she make special trips while she was otherwise running errands in Shelbyville. This "unnecessary usurpation" of her time is not reasonable. *Celeste v. East Meadow Union Free Sch. Dist.*, 373 Fed. App'x 85, 88 (2d Cir. 2010). To the extent that Ms. Ellison would want to avail herself of other postal services, the hours of these other post offices are less than those of the Shelbyville post office.

The district court did not believe it was necessary to explore the differences in services between the Shelbyville post office and the out-of-town post offices, and refused to accept evidence demonstrating these differences, as it held that Ms. Ellison had access to the USPS website where she could obtain USPS products. But the evidence is uncontested that the services on the USPS website do not replicate what is available to those who are able to access the interior of the Shelbyville post office. Some items are not available online that are available in person. Some services cannot be paid for online and

19

even services that can be purchased online may result in delays of a week or more in Ms. Ellison being able to mail an item. Additionally, some items purchased online are more expensive than if purchased in-person because of shipping and handling charges. Electronic access does not make the "services, programs, or activities [of USPS] readily accessible to" Ms. Ellison. 28 C.F.R. § 35.150(b)(1).

USPS suggested as an accommodation that Ms. Ellison use the ramp at the rear of the post office building. This does not allow her access into the building at all. All she can do is call or push a buzzer and hope that a USPS employee responds. When, and if, they do, she will have to try and transact business with the employee going back and forth to the post office building while she waits outside. She will have to surrender her credit card and PIN number to the employee. Moreover, if the ramp is blocked, as it has been previously, she will not be able to do anything. She may not even be able to get out of her car. The district court properly expressed doubts as to whether this complied with the Rehabilitation Act. (S.A. 9). It most certainly does not provide "equal opportunity to . . . gain the same benefit" as those who can physically access the building. *Choate*, 469 U.S. at 305.

3.     Ms. Ellison is denied meaningful access to the post office, and she is therefore entitled to a reasonable accommodation. This Court has noted that an accommodation is reasonable "if it is both efficacious and proportional to the costs to implement it." *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)

(citation omitted). In this case there are no reasonable accommodations available other than making "reasonable structural changes" to the Shelbyville post office. *Tennessee v. Lane*, 541 U.S. 509, 532 (2004). Constructing a ramp or other means so that Ms. Ellison and other persons with disabilities may access the post office building is reasonable. To the extent that USPS believed that this would impose any "undue financial and administrative burdens," 28 C.F.R. § 35.150(a)(3), it had the burden of proving this by raising this as an affirmative defense, which it failed to do. Moreover, given that USPS had, at one point, announced that it was as planning to install a ramp at the main entrance of the post office, and had detailed architectural drawings to accomplish this, it cannot be heard now to argue that this is an undue burden, even if it had properly raised the affirmative defense.

## Argument

I.     Standard of review

This Court "review[s] a district court's grant of summary judgment *de novo.*" *Golla v. Office of Chief Judge of Cook Co., Ill.*, 875 F.3d 404, 407 (7th Cir. 2017) (further citation omitted). "The question on a motion for summary judgment is whether the moving party has shown there is 'no genuine dispute as to any material fact,' and is entitled to summary judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). When a case is decided on cross-motions for summary judgment this Court will "constru[e] all facts and draw[ ] all reasonable inferences in favor of the party against whom the motion under

consideration was filed." *Hess v. Board of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016) (further citations omitted).

II.   The Rehabilitation Act requires that USPS provide Ms. Ellison, a qualified person with a disability, meaningful access to its programs and activities and requires reasonable accommodations so that this may occur[6]

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), provides that

[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency or by the United States Postal Service.

The "program or activity" is defined as "all of the operations of" the entity. 29 U.S.C. § 794(b).

An individual with a disability includes, among other persons, a person who has a physical or mental impairment that substantially limits one or more major life activities. 29 U.S.C. § 705(20)(B), 42 U.S.C. § 12102.[7] Rehabilitation Act regulations that are specific

---

[6]   The Architectural Barriers Act ("ABA") requires that "[t]he United States Postal Service, in consultation with the Secretary of Health and Human Services, shall prescribe such standards for the design, construction, and alteration of its building to insure whenever possible that physically handicapped persons will have ready access to, and use of, such building." 42 U.S.C. § 4154a. However, the requirements of the ABA are not retroactive and therefore do not apply if a post office was constructed or altered prior to August 12, 1968. 42 U.S.C. §§ 4151, 4155. The uncontested evidence in this case is that there has been no construction or alteration of the front steps of the Shelbyville post office since the effective date of the ABA and therefore the ABA does not apply in this case. (Dkts. 32-3 at 31 [ll. 6 - 19]; 48).

[7]   The latter statutory citation, specifically incorporated in the Rehabilitation Act, is the definition of disability within the American with Disabilities Act. Title II of the ADA also prohibits discrimination against qualified individuals with disabilities because of their disabilities, although it covers a broader range of governmental entities. 42 U.S.C § 12132. While

to USPS state that a person is "a qualified individual with a disability" if she "meets the essential eligibility requirements for participation in, or receipt of benefits from, that program or activity." 39 C.F.R. § 255.2(h)(2).

The district court noted that "the parties do not dispute that Ms. Ellison is a qualified individual with a disability under the [Rehabilitation] Act." (S.A. 7). This is undoubtedly correct. Ms. Ellison is unable to walk because of her transverse myelitis. The Rehabilitation Act applies to persons who have impairments that substantially limit one or more major life activities, 29 U.S.C § 705(20)(B), 42 U.S.C. § 12102(1)(A), and "major life activities include, but are not limited to. . .walking," 42 U.S.C. § 12102(2)(A). And Ms.

---

the ADA does not directly cover USPS or federal agencies in general, *see* 42 U.S.C. § 12131(1), this Court has recognized that

> Title II of the ADA was modeled after § 504 of the Rehabilitation Act; the elements of claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other. The chief difference between the two statutes is that the Rehabilitation Act applies only to entities receiving federal funding, while Title II of the ADA contains no such limitation. Another difference is that the Rehabilitation Act requires that the exclusion be *solely* by reason of disability, while the ADA requires only that the exclusion be by reason of the disability.

*Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 845 n.6 (7th Cir. 1999) (Court's emphasis) (citations omitted). Given that it is undisputed that the sole reason Ms. Ellison cannot access the post office is due to her disability, the distinction noted by this Court between the two statutes is of no consequence and is not explored further.

Therefore, "[t]he relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are materially identical . . . courts construe and apply them in a consistent manner, and . . . require the same analysis." *A.H. by Holzmueller v. Ill. High Sch. Ass'n.*, 881 F.3d 587, 592 (7th Cir. 2018). Accordingly, in this brief Ms. Ellison will cite, as appropriate, precedent from both ADA and Rehabilitation Act cases.

Ellison is certainly "qualified" in that if she were not mobility impaired, she would be able to climb the stairs and access all the services at the Shelbyville post office. *See, e.g., Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120 (7th Cir. 1997), *abrogated on other ground as recognized by Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013) ("'Otherwise qualified' means that were she not handicapped, [the plaintiff] would have qualified for the program or treatment she was denied because of her handicap.").

The first question presented in this case is therefore whether Ms. Ellison has been denied the "benefit" of USPS programs and activities. 29 U.S.C. § 794(a). In *Alexander v. Choate*, 469 U.S. 287 (1985) the Court stressed that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit" offered. *Id.* at 301. The person with a disability is not required to demonstrate that she has been completely prevented from enjoying a service to establish a violation of the ADA or Rehabilitation Act. *Disabled in Action v. Bd. of Elections in City of NY*, 752 F.3d 189, 198 (2d Cir. 2013). The question is "whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003).

In determining whether meaningful access is provided "courts examine whether meaningful access was provided to a disabled individual by comparing the service provided to non-disabled individuals." *Segal v. Metro. Council*, 29 F.4th 399, 404 (8th Cir.

24

2022) (citations omitted). The person with a disability must be given "equal opportunity to . . . gain the same benefit." *Choate*, 469 U.S. at 305 (internal quotation and citation omitted). "Evenhanded treatment" is required. *Id.* at 304.

In order to prevent an otherwise qualified person from being denied the benefits of the program in question, "reasonable accommodations in the . . . program or benefit may have to be made," *Id*. at 301 (footnote omitted), and the failure to make such an accommodation is unlawful discrimination. *Wisc. Cmty Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). A reasonable accommodation must be such that the service of the entity, when viewed "in its entirety is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).[8] However, accommodations do not have to be made if the defendant "can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 28 C.F.R. § 41.53.

USPS is therefore required to reasonably accommodate Ms. Ellison as necessary so she may obtain meaningful access to the benefits of its services. The district court concluded that access to out-of-town post offices and online USPS services available to Ms. Ellison provided this meaningful access so that the fact that she is not able to enter the Shelbyville post office is not a violation of the Rehabilitation Act. This is erroneous.

---

[8]     This is the ADA regulation for facilities in existence prior to the effective date of the ADA, January 26, 1992. *See, e.g., Chaffin v., Kan. St. Fair Bd.*, 348 F.3d 850, 860 (10th Cir. 2003), *overruling on other grounds recognized by Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012).

III.    The accommodations offered to Ms. Ellison do not provide her with the opportunity to gain the same benefits from the USPS that persons obtain who are physically able to enter the Shelbyville post office and are therefore not reasonable

The various benefits that persons who are able to enter the Shelbyville office gain bear repeating. As noted, patrons without a disability are able to access post office boxes 24 hours a day and enter the retail lobby every weekday from 8:00 a.m. to 4:30 p.m. and on Saturday from 8:00 a.m. to 2:30 p.m., 49 hours a week. (*Supra* at 4). During the time that it is open, customers may enter the retail lobby where they can select for purchase packaging, gift cards, greeting cards, and shipping supplies. (*Id.* at 3)**.** They may obtain official USPS envelopes and packaging and access a work table where there is information about selective service registration, USPS's informed delivery system, and what can be safely mailed. (*Id.*). They may also obtain USPS forms such as certified mail receipts, signature confirmation cards, and hold-mail cards. (*Id.*). There are also display cases with information about what can and cannot be mailed as well as information concerning special services provided by the post office, pricing for postal services, and information about the different styles of stamps available. (*Id.* at 3-4). And of course, those who enter the retail lobby of the Shelbyville post office may interact with employees who can inform them about the different types of mail, and who will provide information concerning specific styles of stamps that a customer may wish to purchase. (*Id.* at 3). The employees will weigh mail and will assist with taping packages and providing information concerning insurance that is available for items being mailed. (*Id.*).

26

A.      Neither use of the USPS website or accessing services through out-of-town post offices are reasonable alternatives or modifications in that they do not provide meaningful access to Ms. Ellison

The district court concluded that the Rehabilitation Act was not violated here because Ms. Ellison was able to gain meaningful access to the services otherwise available at the Shelbyville post office by traveling to out-of-town post offices and by accessing services on the USPS website. However, neither of these alternatives provide Ms. Ellison the "equal opportunity to . . . gain the same benefit" as are available at the Shelbyville post office, and as are available to non-disabled customers. *Choate*, 469 U.S. at 305 (internal quotation and citation omitted).

1.      Traveling to the out-of-town post offices is not a reasonable alternative

The district court acknowledged that the record that it had before it was not clear as to whether the out-of-town post offices in Waldron, Manilla, and Fairland have the same services as do the Shelbyville post office, (S.A. 12). However Ms. Ellison had sought permission to submit a declaration, a request the court ultimately denied as moot, that clearly demonstrated that these post offices do not have comparable services (Dkts. 47, 47-1). The district court did not find it necessary to consider this evidence, as it concluded that any deficiencies in the services in those post offices could be made up through use of the USPS website. (S.A. 12).[9] The significance to the district court of the out-of-town

---

[9]      Although the district court found it unnecessary to rule on Ms. Ellison's motion to submit this evidence, finding the motion moot (S.A. 14), it was erroneous for the court not to have done

post offices, therefore, was based primarily on the fact that these post offices have accessible post office boxes. However, using an accessible post office box in an out-of-town post office is not a reasonable alternative for Ms. Ellison as opposed to accessing the Shelbyville post office.

The district court, based on the time of travel from Ms. Ellison's home to the out-of-town post offices, concluded that the minimal extra driving time to go to those other post offices did not violate the Rehabilitation Act. Of course, this discounts the fact that Ms. Ellison simply has no reason to travel to outlying rural areas: she lives in Shelbyville, and the rest of her errands are accomplished there. Having to travel out of her city simply to find an accessible building greatly increases the time she must spend and distance she must travel.[10] An "accommodation must overcome structural impediments and non-trivial temporal delays that limit access to program, services, and activities." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016) (citation omitted). This is not a trivial temporal delay.[11]

---

so as the evidence would have definitively demonstrated what the district court stated was "not clear from the record[,] whether the alternate locations sell the same or similar retail items as the Shelbyville post office." (S.A. 12).

[10]     As Ms. Ellison noted in her filings with the district court, (Dkt. 41 at 14 n.5), the towns where the other post offices are located are tiny, ranging in size from 401 to 647 persons. It is unlikely that Ms. Ellison will be able to run her other errands there.

[11]     "These regulations respond to Congress' concern that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.'" *Neighborhood Ass'n Of The Back Bay, Inc. v. Fed. Trans. Admin.*, 463 F.3d 50, 65 (1st

In *Celeste v. East Meadow Union Free School District*, 373 Fed. App'x 85, 88 (2nd Cir. 2010), the court concluded that requiring a student manager of a school football team with cerebral palsy to take a 10-minute detour to attend practices denied him meaningful access under the ADA. The district court found that the case was not apposite as the athletic program was only offered in one place and the student was denied much of his time to participate because of having to take the detour. (S.A. 11). However, the point is that requiring the student to take the detour resulted in an "unnecessary usurpation" of his time. *Celeste,* 373 Fed. App'x at 88. The same is true here.

Although the district court did not rely on the existence of the out-of-town post offices as locations where Ms. Ellison could fulfill her postal needs other than to access a post office box 24-hours a day, it is worth noting that the hours the out-of-town post offices are open for other services are less than those at the Shelbyville post office, meaning she would have to plan her schedule not just to travel out of time, but to access the post offices during their more limited hours. The Manilla post office closes at noon each day and is only open 2 hours on Saturday. (Dkt. 36-5 at 5). The Waldron post office is also open only 2 hours on Saturday and closes for 2 hours each weekday at midday. (*Id.* at 4). And the Fairland post office closes for 1 hour each weekday at midday and is only open from 8 a.m. until noon on Saturday. (*Id.*). The Shelbyville post office, by

---

Cir. 2006) (quoting 42 U.S.C. § 12101(a)(2)) (finding that Federal Transportation Administration's conclusion that placing the accessible elevator entrance 150 feet from the main entrance of the transit station would violate the ADA as creating a segregated entrance was not erroneous).

contrast, is open from 8 a.m. to 4:30 each weekday and from 8:00 to 2:30 p.m. on Saturday. (Dkt. 32-2 at 15:20-23). The Shelbyville post office is both more convenient for Ms. Ellison and has more advantageous hours of operation. Going to the out-of-town post offices is not a reasonable alternative.

> 2.    Accessing postal services on the USPS website is not a reasonable accommodation

The district court did not focus on the possibility that the services available in the out-of-town post offices were not comparable to those available at the Shelbyville post office because the district court concluded that "Plaintiff may browse and purchase a wide array of products through the USPS's website." (S.A. 12). In the age of smart phones and online ordering, there is something particularly disquieting in arguing that a person with a disability can lawfully be restricted to online access while her peers without disabilities are able to access physical structures. Very few brick-and-mortar establishments would need to be accessible in the USPS's conception, and that includes grocery, hardware, and department stores. At the very least, this would appear to contradict the entire purpose of the Rehabilitation Act and the ADA, which was to remove one of our country's "shameful oversights which caused the handicapped to live among society, shunted aside, hidden and ignored." *Choate*, 469 U.S. at 296. Thus the Rehabilitation Act and the ADA are designed "to ensure that disabled persons enjoy the freedoms that all others enjoy and that they are not segregated from the rest of society by reason of their disability." *Bassilios v. City of Torrance, CA*, 166 F. Supp. 3d 1061, 1082-83

(S.D. Cal. 2015).

But the problem here is not that Ms. Ellison has been relegated to electronic access that otherwise makes the "services, programs, or activities [of the USPS] readily accessible" to her—it is more pernicious still. 28 C.F.R. § 35.150(b)(1). The online access through the USPS website does not come close to providing Ms. Ellison with the "even handed treatment" required by the Rehabilitation Act, and does not provide her with meaningful access to the USPS services. *Choate*, 469 U.S. at 305 (internal quotation and citation omitted). She must be allowed "to participate equally" with those who are not persons with disabilities, *Sturtz v. Wisc. Dep't of Corr.*, 642 F. Supp. 2d 881, 886 (W.D. Wis. 2009), and online access certainly does not allow this.

First class mail, first class package services, USPS retail ground, and media mail can only be paid for at a post office, not online. (Dkt. 40-1 at 4). But even if a mailing service is available online, it is not comparable to what is available at a post office facility. For example, if Ms. Ellison wished to send a package using a large flat-rate priority mailbox, she would have to order the box through the USPS website, which promises that it would ship out to Ms. Ellison within 2-8 days. (*Id*. at 5-6). Once it arrived, she would have to assemble the box herself, determine how much postage was required, and call for a pickup as she could not deliver it to the post office. (*Id*. at 6). This lengthy and difficult process contrasts with the experience of someone who is able to walk up the stairs into the Shelbyville post office. These persons could go to the counter, ask for help, and with

31

assistance have the transaction done in minutes.

And, while the USPS shipping and mailing supplies, such as priority mail envelopes and boxes, are free, there are additional costs imposed by USPS for other items ordered online: if Ms. Ellison were to order non-USPS items such as a postage scales, "premium" packaging materials, and a tape dispenser, for example, shipping and handling charges are assessed. (Dkt. 40-1 at 1-2). And the Shelbyville post office has items for sale such as decorative mailing envelopes and gift cards that are not available on the USPS website. (*Id.* at 2).

The district court acknowledged these differences, but stated that "[p]rogram access, however, 'does not operate at such a narrow level of review.'" (S.A. 13 [quoting *Kirola v. City and Co. of San Francisco*, 860 F.3d 1164, 1184 (9th Cir. 2017)]). However, in *Kirola* plaintiffs demonstrated a lack of accessibility in only parts of a "small fraction of the City's total park offerings." *Id.*  Here, of course, the services available on website, taken as a whole, are much more limited than those available in-person. The website does not provide full access to the services available at the Shelbyville post office.

B.     The alternative proposed by USPS, but not accepted by the district court, for Ms. Ellison to use the ramp at the rear of the post office also does not provide meaningful access

In the district court, USPS argued that the ramp at the rear of the post office on the building's loading dock provided Ms. Ellison with equal access to the services of the Shelbyville post office. (Dkts. 37 at 15; 42 at 5-6). Of course, this ramp does not lead to a

public entrance, but to a door that only employees can use. This requires that Ms. Ellison wait outside the building and either call or push a buzzer to try to attract the attention of someone in the building to come out and help her. However, there is no certainty that Ms. Ellison will even be able to start the process, as the approach to the ramp may be blocked. Moreover, there is no guarantee that anyone will respond, or respond in a timely manner, and once they do, they may not be pleased to have to help her in this burdensome manner. And even if they do help, the assistance is greatly limited compared to what is available to patrons who are able to access the interior of the building. They can receive immediate customer service, personal advice about mailing options, a view of all available products, and advice about specific selections. They may also purchase packaging material, gift cards, and greeting cards and may obtain assistance with packaging. Even if a postal employee is willing to bring items out to Ms. Ellison to review, this will necessarily require the employee to go back and forth multiple times as Ms. Ellison waits, and will require her to surrender her credit card and its PIN number to an employee who will disappear back into the building to process any transaction.

The district court properly did not find that that this limited access to the post office through the loading dock satisfied the Rehabilitation Act's requirement of "meaningful access." Instead, it stated that "[t]he court has doubts about whether service at the Shelbyville post office's loading dock complies with Section 504." (S.A. 9). Those doubts are justified, as waiting outside by the loading dock for employees who may not

respond and who are necessarily limited in the services that they can provide even if they do respond does not provide "equal opportunity to . . . gain the same benefit" as those who can physically access the building. *Choate*, 469 U.S. at 305 (internal quotation and citation omitted).[12]

*                    *                    *

The alternatives available to Ms. Ellison, contrary to the conclusion of the district court, are not satisfactory to provide her with meaningful access to USPS's services. She is therefore being denied the "benefits" of the programs or activities conducted by USPS. 29 U.S.C. § 794(a).

IV.   The reasonable accommodation that is required so that Ms. Ellison can have equal access to the services of the Shelbyville post office requires that she be provided with physical access to the building

The district court erred in determining that Ms. Ellison is not being denied meaningful access to the services of the Shelbyville post office. (S.A. 13). However, the denial of meaningful access is not necessarily a violation of the Rehabilitation Act, as in

---

[12]     In the district court, USPS also argued that its offer to deliver the post office box mail to Ms. Ellison was a satisfactory alternative to physical access to the Shelbyville post office box. (Dkt. 37 at 15; Dkt 42 at 6). However, the district court completely ignored this argument, implicitly accepting Ms. Ellison's argument that this did not provide her with meaningful access to the post office box. Ms. Ellison indicated that she wanted to keep the Wheels on the Ground mail in the post office box separate from her personal mail so that nothing would be missed. (Dkt. 32-1 at 89, 91). And, of course, delivery of the contents of the post office box will not resolve the problem of not being able to access the other services available to those who can walk into the Shelbyville post office.

order to "prevail on [her Rehabilitation Act] claim, plaintiff[] must propose a reasonable modification to the challenged public program that will allow [her] the meaningful access [she] seek[s]." *Nat'l Fed. of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016). An accommodation is reasonable if it is "both efficacious and proportional to the costs to implement it." *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) (citation omitted). Of course, the accommodation does not necessarily require the alteration of the physical structure of an entity, if the services, programs, or activities of the public entity may be made accessible in other ways. The "emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make access available." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6 (1st Cir. 2000).

On the other hand, if architectural barriers are present and lesser measures are not effective "in achieving accessibility . . . the public entity [is] required to make reasonable structural changes." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004). Thus, for example, in *Chaffin*, the court, after reviewing access problems at different locations in the Kansas State Fairgrounds, concluded that the fairground, "when viewed in its entirety . . . is not readily accessible." *Chaffin,* 348 F.3d at 861. The court concluded that despite efforts to redesign and renovate the existing facilities on the fairgrounds, "no methods are effective in achieving program accessibility other than making structural changes." *Id.* In *Layton v.*

*Elder*, 143 F.3d 469, 473 (8th Cir. 1998), the court concluded that injunctive relief should issue because the courthouse in question was not accessible and that although the ADA and the Rehabilitation Act "give public entities substantial latitude in determining how they will comply with the Acts . . . if the county intends to continue using the county courthouse to provide services, programs, and activities, it must make the parking accommodations and building accessible."

A reasonable accommodation "must overcome structural impediments." *Wright*, 831 F.3d at 73. The only way to do so here is to require USPS to construct a ramp or other means for Ms. Ellison to enter the building. "[A]n accommodation is unreasonable if it imposes significant financial or administrative costs." *A.H. by Holzmueller*, 881 F.3d at 594.[13] It is up to the defendant to demonstrate that a proposed accommodation "would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.150(a)(3).[14] This is an affirmative defense. *See, e.g.*, *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 822 (10th Cir. 2020), *cert. denied*, –U.S.–, 141 S. Ct. 2858 (2021); *Turner v. Mull*, 784 F.3d 485, 494 (8th

---

[13]    This Court in *Holzmueller* noted that an accommodation is also unreasonable if "it fundamentally alters the nature of the program or service." 881 F.3d at 594. Obviously, placing a ramp at the public entrance of the post office would in no way alter the services of the post office. After all, ramps are commonplace and do not interfere with what goes on inside the building.

[14]    This is an ADA regulation. "Unlike the ADA regulations for existing facilities, see 28 C.F.R. 35.150, the Section 504 regulations do not contain an explicit undue burden defense for existing facilities." *Willits v. City of Los Angeles*, 925 F. Supp. 2d 1089, 1094 (C.D. Cal. 2013).

Cir. 2015); *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999); *Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211, 233 (S.D.N.Y. 2020); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49, 68 n.8 (D. Mass. 2019); *Colbert v. District of Columbia*, 110 F. Supp. 3d 251, 255 (D.D.C. 2015); *see also, e.g., Steimel v. Wernert*, 823 F.3d 902, 916 (7th Cir. 2016) ("It is the state's burden to prove that the proposed changes would fundamentally alter their programs."). USPS did not raise this affirmative defense in its answer. (Dkt. 12 at 12). The defense is therefore waived. *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019).

In any event, requiring that a ramp be constructed would certainly not be unreasonable or burdensome. Despite its well-publicized financial difficulties, the USPS did have operating revenues in fiscal year 2020 of $73.1 billion (Dkt. 36-4 at 1) and could obviously absorb the cost of a ramp, especially given the fact that it already announced that it was "planning to add a new ABA accessible ramp at the main public entrance" of the Shelbyville post office (Dkt. 28-1 at 1). For whatever reason, USPS determined not to proceed with its plans.[15] However, having determined that it was going to construct the ramp, USPS cannot now be heard to argue at this point that the ramp imposes significant financial or administrative burdens. It has already planned for it.

---

[15]     Even if this defense not waived, the refusal of USPS to specify how much the ramp would cost dooms any ability for it to argue undue burden at this juncture.

**Conclusion**

The district court's judgment is erroneous and must be reversed. The evidence is uncontested that Ms. Ellison's rights under the Rehabilitation Act have been violated, as she is being denied the benefits of the programs and services of USPS on account of her status as a person with a disability. USPS should be ordered to construct a ramp for the Shelbyville post office as a reasonable accommodation to remedy this violation.

_/s/ Kenneth J. Falk_
Kenneth J. Falk
_Counsel of Record_
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
spactor@aclu-in.org

Attorneys for Appellant

## Certificate of Compliance

I hereby certify that this brief conforms to Circuit Rule 32.

1.      This brief complies with the type-volume limitations set forth in Circuit Rule 32(c) because it contains 11,980 words based on the "Word Count" feature of Microsoft Word.

2.      This brief complies with the typeface and type style requirements set forth in Circuit Rule 32 because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Palatino Linotype font for the body of the brief and 11-point font for footnotes.

_/s/ Kenneth J. Falk_
Kenneth J. Falk
Attorney at Law

**Certificate of Service**

I hereby certify that on the 20th day of October, 2022, I electronically filed the
foregoing document with the Clerk of the Court for the United States Court of Appeals
for the Seventh Circuit by using the CM/ECF system. Service will be made on all ECF-
registered counsel by operation of the Court's electronic system.

/s/ *Kenneth J. Falk*
Kenneth J. Falk
Attorney at Law

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SHELLIE ELLISON,                    )
                                    )
            Plaintiff,              )
                                    )
        v.                          )        No. 1:20-cv-00953-RLY-MPB
                                    )
UNITED STATES POSTAL SERVICE,       )
                                    )
            Defendant.              )

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

In this action, Plaintiff, Shellie Ellison, alleges that Defendant, United States

Postal Service ("USPS"), violated her rights under Section 504 of the Rehabilitation Act

of 1973, 29 U.S.C. § 794(a), by failing to provide her physical access to the post office in

Shelbyville, Indiana.  By way of relief, Plaintiff seeks an injunction requiring the USPS

to construct a ramp or provide other means of physical access to the Shelbyville facility.

Now before the court are the parties' cross-motions for summary judgment.  For

the reasons that follow, Plaintiff's motion is **DENIED**, and the USPS's motion is

**GRANTED**.

I.      **Background**

Plaintiff is a resident of Shelbyville, Indiana.  (Filing No. 32-1, Ellison Dep. at 7).

The City of Shelbyville has one post office, located at 103 E. Washington Street, that

serves between 175 and 250 persons a day.  (Filing No. 32-2, Hedges Dep. at 9, 60;

Filing No. 32-3, Del Hierro Dep. Ex. 5 at 1).  The USPS owns the building, which was

constructed and first occupied around 1920.  (Del Hierro Dep. Ex. 2 at 2).

1

Plaintiff has used a wheelchair for mobility since 1997.  (Ellison Dep. at 10–11).

The Shelbyville post office is not accessible to wheelchair users; its public entrance can

only be accessed by a set of 10 stairs.  (Del Hierro Dep. Ex. 5 at 1–2).  There is a ramp at

the loading dock in the rear of the facility, but it leads to a door that members of the

public are not permitted to enter.  (*Id.* Ex. 5 at 3–4; Hedges Dep. at 29–30).  The USPS

operates three other post offices within a 10-mile radius of Shelbyville.  (Filing No. 36-5,

Kirklin Decl. Ex. A at 1–2).  All of those locations—in Fairland, Waldron, and Manilla,

Indiana—are wheelchair accessible.  (Filing No. 36-6, Enyart Decl. Exs. 1 & 2; Filing

No. 36-7, Neal Decl.).

Those able to climb the Shelbyville post office's stairs will find PO boxes just

inside the main doors.  (Hedges Dep. at 9–10).  Patrons who rent these PO boxes may

access them 24 hours a day, seven days a week.[1]  (*Id.* at 14).  Behind another set of glass

doors is the "retail lobby."  (*Id.* at 11 & Ex. 11 at 3).  Its hours are 8:00 a.m. to 4:30 p.m.,

Monday through Friday, and 8:00 a.m. to 12:00 p.m. on Saturday.[2]  (Kirklin Decl. Ex. A

at 1).  There, customers can, among other things: purchase stamps, shipping supplies,

greeting cards, and gift cards; inquire about different types of mail (e.g. express, priority,

retail ground, media mail, and bound print) and insurance for mailed items; and receive

---

[1] There is no dispute that the Fairland, Waldron, and Manilla post offices also offer 24/7 access
to PO boxes.
[2] By comparison, the retail hours at the Fairland, Waldron, and Manilla locations are as follows:
<u>Fairland</u>: 8:00 a.m. to 1:00 p.m. and 2:00 p.m. to 4:30 p.m., Monday through Friday, and 8:00
a.m. to 12:00 p.m. on Saturday.
<u>Waldron</u>: 8:00 a.m. to 11:00 a.m. and 1:00 p.m. to 4:00 p.m., Monday through Friday, and 8:00
a.m. to 10:00 a.m. on Saturday.
<u>Manilla</u>: 8:00 a.m. to 12:00 p.m., Monday through Friday, and 9:00 a.m. to 11:00 a.m., on
Saturday.  (D'Angelo Decl. Ex. H–J).

assistance with taping and weighing their packages. (Hedges Dep. at 12–13, 24–28). The retail lobby also contains official USPS envelopes and packaging as well as a worktable with various forms including certified and return mail receipts, signature confirmation cards, and hold-mail cards. (*Id.* at 13, 23–24).

In addition its physical locations, the USPS maintains a website where customers can pay for postage and print shipping labels, as well as access information about insurance, preparing packaging, and scheduling a pickup. (Filing No. 36-8, Send Mail & Packages). Customers can also browse and purchase various items at the virtual "Postal Store," including stamps, packaging, mailing supplies, greeting cards and envelopes, and gifts. (Filing No. 36-9, Postal Store). The USPS's flat rate boxes and envelopes for Priority Mail and Priority Mail Express are also available for free on the website. (Filing No. 36-10, Shipping Supplies).

In 2015, Plaintiff grew frustrated by her inability to enter the Shelbyville post office to transact business. (Ellison Dep. at 21). To obtain services at the facility, she had to park her car at the rear of the building and either call the post office or exit her vehicle and press a buzzer in the middle of a steep ramp connected to the loading dock. (*Id.* at 21–22). A USPS employee would then come out to assist her. (*Id.* at 23). If, for example, she sought to mail a package, the employee would take it inside to weigh along with her credit card to process the transaction. (*Id.*). All the while, Plaintiff would remain outside. (*Id.*).

Plaintiff eventually filed a complaint with the United States Access Board seeking to make the front entrance accessible. (*Id.* at 21, 23, 34). Her complaint also highlighted

various barriers to service accessibility at the loading dock. (*Id.* Ex. 2 at 1–4). The

Access Board concluded that it could not force a change to the front entrance because the

main steps of the Shelbyville post office "are original to the building's construction (prior

to 1968) and have not been altered since." (*Id.* Ex. 2 at 3).[3] Nevertheless, in response to

Plaintiff's complaint to the Access Board, the USPS agreed to install a new van accessible

parking space at the loading dock, rebuild the ramp to make it less steep, relocate the

existing call button from the middle to the top of the ramp, and install a new buzzer at the

front of the accessible parking space. (*Id.* Ex. 3 at 1). These modifications were

completed in 2016 at a cost of approximately $60,000. (*Id.*; Filing No. 36-14, Ramp

Construction Payment). Following the changes, Plaintiff explains that mail trucks at the

loading dock have blocked her use of the accessible parking space on multiple occasions;

she also notes that postal employees have at various times failed to answer her telephone

calls for assistance. (Ellison Dep. at 24, 60–62 & Ex. 6).

In 2017, Plaintiff procured a PO box at the Shelbyville post office for "Wheels on

the Ground," a non-profit organization she founded to educate the public on disability

and accessibility issues. (*Id.* at 13 & Ex. 1 at 7). Plaintiff relies on Wheels on the

Ground's board members or her family to retrieve the PO box's contents. (*Id.* at 30–31).

On occasion she has gone to the post office and called to have an employee bring the

mail to her car. (*Id.* at 31–32). But she would like to be able to retrieve the contents of

---

[3] Plaintiff concedes that the front entrance of the Shelbyville post office is not subject to the detailed standards of the Architectural Barriers Act ("ABA"), 42 U.S.C. § 4151 *et seq.*, which only apply to federal buildings built or altered after 1968.

S.A. 4

the mailbox herself.  (Filing No. 32-4, Ellison Aff. at ¶ 3).  The USPS offered to have the contents of Wheels on the Ground's PO box delivered to Plaintiff's home.  (Del Hierro Dep. Ex. 7 at 2).  Plaintiff refused the offer because she wanted to keep the business mail separate from her personal mail.  (Ellison Dep. Ex. 1 at 3–4).  She also wanted Wheels on the Ground's board members to be able to retrieve mail from the PO box.  (*Id.*).

Plaintiff has not attempted to obtain services from the Shelbyville post office in recent years, last visiting only one or two times in 2019.  (*Id.* at 30).  She now goes to a private company in Shelbyville when she needs to mail packages.  (*Id.* at 24).  However, she wishes to be able to enter the Shelbyville post office to "utilize all of the services available in the retail area" and access Wheels on the Ground's PO box, which the organization still maintains.  (Ellison Aff. at ¶ 4).

In 2019, the City of Shelbyville offered to pay for the addition of a ramp to the front entrance of the post office.  (Del Hierro Dep. Ex. 10 at 1).  The USPS declined the offer, citing regulations that prohibit it from accepting donations of "physical improvements, including, without limitations, exterior improvements, . . . additions, [or] renovations."  (*Id.* at 35; Filing No. 36-16, USPS Handbook § 334.2).

## II.   **Legal Standard**

Summary judgment is appropriate when the moving party shows that there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The ordinary summary judgment standard remains unchanged when the parties file cross-motions for summary judgment: the court construes all facts and inferences arising from those facts in favor of the party against

whom the motion under consideration is made. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797

(7th Cir. 2017).

Because the relevant facts are not in dispute and the parties' cross-motions address

the same issues of law, the court considers the motions together.

## III.   Discussion

Plaintiff argues that the USPS has violated her rights under Section 504 of the

Rehabilitation Act by failing to provide her physical access to the Shelbyville post office.

The court, though sympathetic to her claim, disagrees.

Section 504 provides:

> No otherwise qualified individual with a disability in the United States . . .
> shall, solely by reason of her or his disability, be excluded from the
> participation in, be denied the benefits of, or be subjected to discrimination
> under any program or activity receiving Federal financial assistance or under
> any program or activity conducted by any Executive agency or by the United
> States Postal Service.

29 U.S.C. § 794(a).[4]   The Rehabilitation Act defines "program or activity" to mean "all

of the operations of" a covered entity.  *Id.* § 794(b)(1)(A).

"In order to make out a prima facie case of discrimination under . . . the

Rehabilitation Act, a plaintiff must show: (1) that [s]he suffers from a disability as

defined in the statute[], (2) that [s]he is qualified to participate in the program in question,

---

[4] Much like Section 504, Title II of the American with Disabilities Act ("ADA") provides that
"no qualified individual with a disability shall, by reason of such disability, be excluded from
participation in or be denied the benefits of the services, programs, or activities of a public entity,
or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "Because Title II was
modeled after section 504," the Seventh Circuit generally "appl[ies] precedent under one statute
to cases involving the other."  *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 852 n.1 (7th Cir. 2018).

and (3) that [s]he was either excluded from participating in or denied the benefit of that program based on h[er] disability." *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015) (citing *Jackson v. City of Chi.*, 414 F.3d 806, 810 (7th Cir. 2005)). The parties do not dispute that Plaintiff is a qualified individual with a disability under the Act. Their arguments center on the third element of her prima facie case: whether Plaintiff has been denied the benefit of the USPS's services because she is unable to enter the Shelbyville post office. Broadly, those services include the ability to rent a PO box, purchase various retails items, obtain advice on mailing matters, and receive assistance with mailing items like packages.

The Supreme Court has explained that an executive agency, like the USPS, discriminates against an otherwise qualified handicapped individual when it fails to provide "*meaningful access* to the benefit . . . [it] offers." *Alexander v. Choate*, 469 U.S. 287, 300–01 (1985) (emphasis added); *Am. Council of the Blind v. Paulson*, 463 F. Supp. 2d 51, 58 (D.D.C. 2006) (observing that "[t]he question of what is 'meaningful access' in a specific case is ultimately one of law"), *aff'd*, 525 F.3d 1256 (D.C. Cir. 2008). In order to assure meaningful access, "reasonable accommodations in the [agency]'s program or benefit may have to be made." *Choate*, 469 U.S at 301; *see also Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006) ("[T]he Rehabilitation Act requires public entities to modify federally assisted programs if such a modification is necessary to ensure that the disabled have equal access to the benefits of that program.").

An individual "may be deprived of meaningful access to public programs due to architectural barriers." *Disabled in Action v. Bd. of Elections in N.Y.*, 752 F.3d 189, 197

7

(2d Cir. 2014).  Accordingly, structural modifications to older buildings not otherwise

required by law (i.e. "existing facilities") may be necessary "to assure evenhanded

treatment and the opportunity for handicapped individuals to participate in and benefit

from [public] programs."  *Choate*, 469 U.S. at 304; *id.* at 297 (the "elimination of

architectural barriers was one of the central aims of the Act").

     Whether structural modifications to existing facilities are required, however,

depends on the availability of alternative means to facilitate program access.  *See Rose v.*

*U.S. Postal Serv.*, 774 F.2d 1355, 1363 (9th Cir. 1984); *Fox v. U.S. Postal Serv.*, No.

6:05-CV-053-C, 2007 WL 9833992, at *4 (N.D. Tex. Jan. 25, 2007).  Indeed, Section

504's "emphasis on *program* accessibility rather than *facilities* accessibility was intended

to ensure broad access to public services, while, at the same time, providing public

entities with the flexibility to choose how best to make access available."  *Parker v.*

*Universidad de Puerto Rico*, 225 F.3d 1, 6 (1st Cir. 2000) (internal quotations and

citation omitted) (emphasis added).

     This "flexible" approach is reflected in regulations that various federal agencies

have promulgated to implement Section 504's mandates.  The Department of Health and

Human Services' ("HHS") regulations,[5] for example, provide that a "recipient [of federal

funds] shall operate its program or activity so that when each part is viewed in its

entirety, it is readily accessible to handicapped persons."  45 C.F.R. § 84.22(a).  Notably,

this "does not require a recipient to make each of its existing facilities or every part of a

---

[5] The Supreme Court has noted that HHS's regulations are "an important source of guidance on
the meaning of § 504."  *Choate*, 469 U.S. at 304 n.24.

facility accessible to . . . handicapped persons."[6]  *Id.*  Nor is a recipient "required to make

structural changes in existing facilities where other methods are effective" in making its

program accessible.[7]  45 C.F.R. § 84.22(b).  For example, a recipient may comply with

Section 504 through the delivery of services at "alternate accessible sites."  *Id.*; *see also*

*Tennessee v. Lane*, 541 U.S. 509, 532 (2004) ("[I]n the case of older facilities, for which

structural change is likely to be more difficult, a public entity may comply with [ADA]

Title II by adopting a variety of less costly measures, including relocating services to

alternative, accessible sites . . . .").

    With this framework in mind, the court turns to the case at hand.  Plaintiff argues

that she lacks meaningful access to the USPS's services because the Shelbyville post

office, which is closest to her home, is not physically accessible to wheelchair users.  The

USPS counters that it has provided Plaintiff meaningful access to its services through a

variety of alternative means, including delivery of services at the rear of the Shelbyville

facility, at alternate accessible postal locations, on the USPS's website, and by special

delivery of certain items to Plaintiff's home.

    The court has doubts about whether service at the Shelbyville post office's loading

dock complies with Section 504.  That said, the loading dock is not Plaintiff's only access

point to the USPS's "program or activity."  After careful consideration of the parties'

---

[6] The Department of Justice's regulations implementing Section 504 similarly provide that a recipient is "not necessarily require[d] . . . to make each of its existing facilities or every part of an existing facility accessible to and usable by handicapped persons."  28 C.F.R. § 41.57.

[7] USPS regulations also provide that, in determining whether structural modifications should be made to its facilities, "due regard is to be given to . . . [t]he availability of other options to foster service accessibility."  39 C.F.R. § 255.8.

arguments, the court concludes that Plaintiff has meaningful access to the USPS's

services due to (1) the presence of three, wheelchair-accessible post offices in close

proximity to her home, each with around-the-clock PO box access; and (2) the

availability of retail items for purchase on the USPS's website.

Plaintiff maintains that it is "simply unreasonable" to suggest she should be forced

to "expend additional time and expense travelling" to the alternate facilities solely

because she cannot climb stairs.  (Filing No. 41, Pl.'s Mem. in Resp. at 14).  Yet, as

outlined above, the USPS may comply with Section 504 through the delivery of services

at alternate accessible locations.  And that may require an individual to travel farther than

she otherwise would if all facilities were accessible—even, perhaps, outside the

geographical limits of her hometown.

The caselaw provides limited guidance on how close an alternate accessible site

must be to satisfy Section 504.  *See, e.g.*, *G.P. v. Claypool*, 466 F. Supp. 3d 875, 889

(N.D. Ill. 2020) (observing that alternate accessible schools were "in relatively close

proximity to Plaintiff's home"); *Hanebrink v. Adams*, No. 8:08–74–HMH, 2009 WL

3571539, at *4 (D.S.C. Oct. 26, 2009) ("The location of one 'readily accessible' facility

within close proximity of [the plaintiff's] home is sufficient . . . .").

Plaintiff must already drive seven minutes from her home to the Shelbyville post

office.  (Filing No. 46, Joint Stipulation).  By comparison, her home is an 11, 13, and 15-

minute drive from the Waldron, Manilla, and Fairland facilities, respectively.  (*Id.*).

Thus, assuming Plaintiff left her home with the sole purpose of visiting the post office,

obtaining service at an alternate accessible location would cause her approximately four

to eight minutes of extra driving time, one way.  As the court sees it, this inconvenience

does not violate the Rehabilitation Act.  *See Choate*, 469 U.S. at 299 ("Any interpretation

of § 504 must . . . be responsive to two powerful but countervailing considerations—the

need to give effect to the statutory objectives and the desire to keep § 504 within

manageable bounds.").

Plaintiff cites *Celeste v. East Meadow Union Free School District* in support of

her position that the additional driving time is unreasonable.  373 F. App'x 85 (2d Cir.

2010).  There, in an unpublished opinion, the Second Circuit affirmed a jury's conclusion

that a student with cerebral palsy lacked meaningful access to programs offered at the

athletic fields behind his school where "minor architectural barriers . . . forced him to

take a ten minute detour each way in order to reach and return from [those] fields." *Id.* at

88.  Putting aside the fact that the "detour" in this case is less than ten minutes each way,

*Celeste* itself is factually inapposite.  The programs at issue in *Celeste* were offered in

*one* location—the athletic fields—so the delay "detract[ed] from [the student]'s

participation as a manager of the football team" and "cut almost in half his time to

participate in a typical forty-five minute physical education class." *Id.*  Here, there is no

reason to conclude that Plaintiff would obtain any lesser benefit from the USPS by virtue

of travelling an extra four to eight minutes to an alternate accessible facility.

To be sure, the alternate accessible post offices do have more limited retail hours.

While the Shelbyville post office is open 46.5 hours a week, (Kirklin Dec. Ex. A at 1),

the post offices in Fairland, Waldron, and Manilla are open 41.5, 32 and 22 hours,

respectively, (*id.*; D'Angelo Decl. Ex. H–J).[8]  The difference in operating hours, however, is not as stark as the aggregate numbers might suggest.  The disparity between the Shelbyville and Fairland offices boils down to one hour each weekday around lunch.  Where the Fairland post office closes Monday to Friday from 1:00 p.m. to 2:00 p.m., the Shelbyville facility does not.  Perfection simply is not the standard for determining whether Plaintiff has equal access to the benefit of the USPS's services.  *See Kirola v. City & Cty. of S.F.*, 860 F.3d 1164, 1184 (9th Cir. 2017) (noting that "perfect accessibility is not the applicable standard" under Title II's implementing regulations); *see also Am. Council of the Blind*, 463 F. Supp. 2d at 58.

The court acknowledges that it is not clear from the record whether the alternate locations sell the same or similar retail items as the Shelbyville post office.  To the extent that the retail offerings meaningfully differ, Plaintiff may browse and purchase a wide array of products through the USPS's website, including stamps, packaging, mailing supplies, greeting cards and envelopes, and gifts.  There is no dispute that Plaintiff has internet access and the ability to purchase these items online.

Plaintiff argues that the USPS's online store, unlike the Shelbyville post office, does not offer "certain holiday specialty mailing supplies and gift cards" for purchase.

---

[8] In her response brief, Plaintiff cites a former Shelbyville post office employee's deposition testimony to establish that the Shelbyville facility is open 49 hours per week.  (Pl.'s Mem. in Resp. at 14).  Yet she relies on the USPS's website to establish the operating hours at the alternate accessible post offices.  The website provides that the Shelbyville post office is open 46.5 hours per week.  For consistency, the court relies on the USPS's website for all facilities.  The difference in Shelbyville's operating hours, it should be noted, does not change the court's analysis.

(Pl.'s Mem. in Resp. at 9). She also notes that website's greeting cards and "premium" shipping supplies (like a postal scale) are subject to shipping and handling fees not charged in-person. (*Id.*). True enough. Program access, however, "does not operate at such a narrow level of review." *See Kirola*, 860 F.3d at 1184; *id.* ("There may be something unique about . . . every facility," but Title II's implementing regulations "require[] only that the program as a whole be accessible, not that all access barriers . . . be remedied.").

The court shares Plaintiff's frustration that the Shelbyville post office is not physically accessible to wheelchair users. Section 504, however, does not require the USPS to make structural changes at the Shelbyville facility if it can provide Plaintiff meaningful program access through other means. The bottom line is that the USPS provides Plaintiff meaningful access to its services at several post offices surrounding Shelbyville and through its online store. Accordingly, Plaintiff has not been "excluded from participating in or denied the benefit of" the USPS's "program or activity" because of her disability. *Novak*, 777 F.3d at 974. Her Section 504 claim thus fails as a matter of law.

As a final matter, the parties argue whether building a ramp at the front of the Shelbyville post office would impose an undue burden on the USPS. They also argue whether the USPS has waived any such defense by failing to plead it. Because the court has determined that physical modifications to the Shelbyville facility are not required to provide Plaintiff meaningful access to the USPS's services, the court need not address these arguments.

**IV.   Conclusion**

For the foregoing reasons, the court concludes that Plaintiff has meaningful access

to the USPS's mailing and related services.  Therefore, the USPS has not violated

Plaintiff's rights under Section 504.  Accordingly, Plaintiff's motion for summary

judgment (Filing No. 32) is **DENIED**, and the USPS's cross-motion for summary

judgement (Filing No. 36) is **GRANTED**.  Plaintiff's motion to file a supplemental

declaration (Filing No. 47) is **DENIED as MOOT**.  Final judgment shall issue

accordingly.

**SO ORDERED** this 19th day of May 2022.


RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHELLIE ELLISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00953-RLY-MPB |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**FINAL JUDGMENT**

Consistent with today's Entry on Cross-Motions for Summary Judgment, the court

now enters final judgment against Plaintiff and in favor of Defendant.

**SO ORDERED** this 19th day of May 2022.


RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Roger A.G. Sharpe, Clerk

BY:  _Dina M. Dafe_

Deputy Clerk, U.S. District Court


Distributed Electronically to Registered Counsel of Record.


1

S.A. 15

## <u>CIRCUIT RULE 30(D) CERTIFICATION</u>

Pursuant to Circuit Rule 30(d), I hereby certify that all materials required by

Circuit Rule 30(a) and (b) are included within this appendix.

<u>s/ *Kenneth J. Falk*</u>
Kenneth J. Falk
Attorney at Law
